UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DENIS SHIROKIKH,

Petitioner,

- against -

RAUL MALDONADO JR., *in his official capacity as Warden, Metropolitan Detention Center, Brooklyn, et al.*,

Respondents.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-1794 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner Denis Shirokikh filed a petition for a writ of habeas corpus challenging Respondents' decision to detain him without an individualized bond hearing. The Court granted his petition, ordering his release from unlawful detention. Petitioner has moved for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). For the reasons discussed below, Petitioner's motion for attorneys' fees is granted, and Petitioner is awarded $2,759.09 in attorneys' fees pursuant to the EAJA.

## BACKGROUND

Petitioner Denis Shirokikh is a national of Russia, (*see* Dkt. 5, at ECF[1] 20), who has been living in the United States since October 2023, (*see* Pet., Dkt. 1, at 2). On November 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") agents arrested him and eventually transferred him to the Metropolitan Detention Center where he remained for nearly four months until the Court ultimately ordered his release. (*See id.*) On March 26, 2026, Petitioner brought this action seeking

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

a writ of habeas corpus in which he claimed that his detention was unlawful and that he was thus entitled to release. (Pet., Dkt. 1, at 5–8.) Later that day, the Court ordered Respondents to show cause why Petitioner's request for a writ of habeas corpus should not be granted. (*See* O.S.C., Dkt. 4.) On April 2, 2026, Respondents filed a response in which they "acknowledge[d]" the "cases in which petitioners residing in the United States for several years were found to be improperly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), . . . including [the Court's] decisions in *R.A.R.R. v. Almodovar*, No. 25-cv-6597 (E.D.N.Y. Dec. 19, 2025) (Chen, J.) and *Yin v. Maldonado*, No. 26-cv-0103 (E.D.N.Y. Feb. 4, 2026) (Chen, J.), though they . . . respectfully disagree[d] with the decisions." (Resp'ts' O.S.C. Resp. ("O.S.C. Resp."), Dkt. 5, at 2.)

On April 7, 2026, the Court issued a Memorandum & Order granting the Petition and ordering Petitioner's release in light of the Court's recognition that many other courts, including this Court, had found that noncitizens like Petitioner—who were detained by ICE after living in the United States for years—were already in the country and therefore could only be detained pursuant to 8 U.S.C. § 1226(a) ("Section 1226(a)"), not 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)(2)(A)"). (Mem. & Order, Dkt. 6 at 1–2 (citations omitted).) Accordingly, the Court held that Petitioner was detained pursuant to Section 1226(a)—not Section 1225(b)(2)(A)—and that therefore his detention without any individualized custody determination was unlawful. (*Id.*)

On April 21, 2026, Petitioner moved for $1,839.39 in attorneys' fees pursuant to the EAJA. (Mot. Fees ("Fees Mot."), Dkt. 9, at 1.) On May 15, 2026, Respondents filed an opposition to Petitioner's motion for fees, (Opp'n Mot. EAJA Fees ("Fees Opp'n"), Dkt. 10), and on May 18, 2026, Petitioner filed a reply in further support of his motion, (Reply Supp. Mot. Fees ("Fees Reply"), Dkt. 11). In Petitioner's reply, he amended his requested fees to be $2,759.09 to account for the hours spent drafting the reply in support of his motion for attorneys' fees. (*Id.*)

## LEGAL STANDARD

The EAJA empowers federal courts to "award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Second Circuit has established that "a habeas proceeding challenging immigration detentions constitutes a 'civil action' under the EAJA." *Vacchio v. Ashcroft*, 404 F.3d 663, 672 (2d Cir. 2005).

To award EAJA fees, the Court must conclude:

> (1) that the claimant [is] a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). Furthermore, the attorneys' fees must be "reasonable." *See* 28 U.S.C. § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees" below "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee").

Where a petitioner "demonstrate[s] that [he] is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (per curiam).[2] The Government's position is substantially justified if it "had a reasonable basis in both

[2] The prevailing party is the one to whom "the court grants relief . . . based on 'an assessment of the merits' and thus 'unquestionably' and 'materially alter[s] the existing legal relationship between the parties.'" *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 505–06 (S.D.N.Y. 2025) (alteration in original) (quoting *Vacchio*, 404 F.3d at 674).

law and fact." *Vacchio*, 404 F.3d at 674 (quoting *Sotelo-Aquije v. Slattery*, 62 F.3d 54, 57 (2d Cir. 1995)); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (concluding that "substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person," which is "no different from the 'reasonable basis both in law and fact' formulation"). When evaluating whether the Government's actions were "substantially justified," courts consider the Government's pre-litigation conduct, as well as its litigation positions, because "under the EAJA 'only one threshold determination for the entire civil action is to be made.'" *Senville v. Madison*, 331 F. App'x 848, 850 (2d Cir. 2009) (summary order) (quoting *Jean*, 496 U.S. at 159); *see also* 28 U.S.C. § 2412(d)(2)(D) (defining "position of the United States" to mean, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based").

## DISCUSSION

Respondents do not dispute that Petitioner is a "prevailing party," that Petitioner's motion for fees is timely, or that the amount of fees requested is reasonable. Instead, Respondents oppose Petitioner's fee request solely because they contend their legal position was "substantially justified." (Fees Opp'n, Dkt. 10, at 2.)

### I. Respondents' Position Was Not "Substantially Justified"

Respondents have failed to carry their burden of demonstrating that their pre-litigation actions and litigation positions were "substantially justified." Respondents argue that "[g]iven the existence of numerous, well-reasoned decisions from federal courts at the district and appellate levels agreeing with Respondents' position, and the absence of controlling authority foreclosing that position, Respondents' arguments were substantially justified." (*Id.*) In support, Respondents cite decisions by the Fifth Circuit and Eighth Circuit Courts of Appeals, one decision by a court in the Southern District of New York, and one decision by a court in this District. (*See id.* (citing

*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); O.S.C. Resp., Dkt. 5, at 2 n.3); O.S.C. Resp., Dkt. 5, at 2 n.3 (citing *Quezada v, Francis.*, No. 26-CV-0387 (JPC), 2026 WL 380711 (S.D.N.Y. Feb. 11, 2026); *Saamishvili v. Flanagan*, No. 25-CV-6178 (BMC), 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026), *appeal filed* Feb. 12, 2026).)

Respondents' reliance on this limited case law is misplaced for multiple reasons, including because these decisions post-date Respondents' invocation of Section 1225(b)(2)(A) to detain Petitioner. As Respondents acknowledge, "[t]he issue for EAJA purposes is . . . whether the government was substantially justified in believing the law not to have foreclosed its position *during the underlying litigation*." *Dunn*, 169 F.3d at 786 (emphasis added); (*see* Fees Opp'n, Dkt. 10, at 2 (quoting the same language)). Respondents unlawfully detained Petitioner on November 8, 2025 pursuant to Section 1225(b)(2)(A). The decisions Respondents cite from district courts in this Circuit and the Fifth Circuit and Eighth Circuit Courts of Appeals approving of their legal position *all* came after Respondents purportedly relied on Section 1225(b)(2)(A) to detain Petitioner. Respondents have not pointed to a single decision from any court anywhere in the country that had held Respondents' litigation position was legally correct *before* Respondents detained Petitioner. Therefore, none of the decisions that Respondents rely on have any bearing on whether Respondents were "substantially justified" at the time they detained Petitioner purportedly pursuant to their authority under Section 1225(b)(2)(A).[3]

[3] Furthermore, to the extent the Court should consider decisions that post-date Respondents' actions in determining whether Respondents' litigation position was "substantially justified," the Second Circuit Court of Appeals has since squarely held that Respondents' position was legally incorrect. *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, No. 26-104, --- S.Ct. ----, 2026 WL 2942994 (U.S. Oct. 1, 2026). So, any post-hoc survey of court decisions only adds further weight against a finding that Respondents' position was "substantially justified."

Neither do Respondents' case citations support the proposition that their litigation position was "substantially justified" when taken on April 2, 2026 in response to the Court's Order to Show Cause. As early as September 29, 2025, a court in this District had held that Respondents' litigation position was legally incorrect, *see J.U. v. Maldonado*, 805 F. Supp. 3d 482, 494 (E.D.N.Y. 2025). All told, by the time Respondents filed their response papers here, ten of the eleven judges in this District to consider the issue had concluded—in dozens of cases—that Respondents' position was legally incorrect.[4] Of particular relevance, as Respondents acknowledged in espousing their litigation position, *this* Court had already *twice* found the same, and Respondents' only argument for continued detention of Petitioner was that they "respectfully disagree[d] with [those two] decisions." (*See* O.S.C. Resp., Dkt. 5 at 2 (citing *R.A.R.R. v. Almodovar*, 824 F. Supp. 3d 299 (E.D.N.Y. 2026); *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026)).) The fact that Respondents noted a single decision in this District finding the opposite, as well as decisions from two other Courts of Appeals does not make their position substantially justified where this Court and the overwhelming majority of other judges in this District had already rejected the position. Even more so given that Respondents did

[4] *See Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434, at *4–8 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 484–90 (E.D.N.Y. 2025) (Morrison, J.) (issued Oct. 6, 2025); *Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 185–89 (E.D.N.Y. 2025) (Komitee, J.) (issued Nov. 18, 2025); *Montoya v. Bondi*, No. 25-CV-6363 (JMA), 2025 WL 3280762, at *1 (E.D.N.Y. Nov. 25, 2025) (Azrack, J.); *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400–02 (E.D.N.Y. 2025) (Gonzalez, J.) (issued Nov. 25, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 308–12 (E.D.N.Y. 2025) (Choudhury, J.) (issued Nov. 28, 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Ye v. Maldonado*, No. 25-CV-6417 (AMD), 2025 WL 3521298, at *3–6 (E.D.N.Y. Dec. 8, 2025) (Donnelly, J.); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *3–5 (E.D.N.Y. Dec. 17, 2025) (Merle, J.); *Flores-Linares v. Bondi*, No. 26-CV-0298 (SJB), 2026 WL 179208 (E.D.N.Y. Jan. 22, 2026) (Bulsara, J.), *appeal filed* Aug. 19, 2026; *Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389 (E.D.N.Y. Feb. 4, 2026) (Chen, J.); *but see Saamishvili v. Flanagan*, No. 25-CV-6178 (BMC), 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026) (Cogan, J.) (accepting Respondents' position), *appeal filed* Feb. 12, 2026.

not attempt to provide any basis for the Court to reverse its prior conclusions. This weighs strongly against finding that Respondents' litigation position was "substantially justified" at the time they advanced it in this case. *See Pierce*, 487 U.S. at 569 (recognizing that "a string of losses can be indicative" of a litigation position not being "substantially justified").

Even assuming, *arguendo*, that Respondents' litigation position was "substantially justified" when they filed their brief in opposition to the Petition on April 2, 2026, Respondents point to no authority to suggest it was "substantially justified" at the time they detained Petitioner on November 8, 2025 pursuant to Section 1225(b)(2)(A). *See Gomez-Beleno v. Holder*, 644 F.3d 139, 145 (2d Cir. 2011) (assessing whether the "position of the United States" was "substantially justified" by looking at both the Government's litigation position and the Government's pre-litigation conduct at the agency level). As discussed above, Respondents do not cite a single decision supporting their position before Respondents detained Petitioner on November 8, 2025, and the Court is aware of only six—none of which were in this Circuit—compared to more than 200 that had rejected it.[5] Instead, Respondents suggest that it was "substantially justified" because of "the absence of controlling authority foreclosing that position" when Petitioner was detained in November 2025. (Fees Opp'n, Dkt. 10, at 2.) The Court finds this argument disingenuous. There was no "controlling authority foreclosing that position," (*id.*), because "[f]or *decades*, 'DHS's longstanding interpretation' ha[d] been that [Section] 1226[(a)], and not [Section] 1225[(b)(2)(A)], 'applies to [noncitizens] who have crossed the border between ports of entry and are shortly thereafter apprehended,'" *Savane v. Francis*, 801 F. Supp. 3d 483, 489 (S.D.N.Y. 2025) (emphasis

[5] *See Barco Mercado*, 811 F. Supp. at 506 (Appendices A and B cataloguing 362 decisions from around the country as of November 2025 in which Respondents' position had been rejected 350 times and showing that, as of November 8, 2025, the breakdown was 205 rejections and 6 approvals).

added) (first quoting Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954); and then citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (Department of Justice announcing new regulations and stating that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.")). The Government cannot "revisit[] [its] legal position"[6] for policy reasons without due care for its soundness as a matter of law, point to a lack of controlling authority foreclosing it due to its novelty, and then claim its position was "substantially justified" because no authorities had *yet* found it *unjustified*.[7] Finding that the Government's actions under such circumstances were "substantially justified" would undermine "the EAJA's fundamental objective to encourage individuals to challenge governmental policies that are not 'substantially justified.'" *Healey v. Leavitt*, 485 F.3d 63, 68 (2d Cir. 2007) (citing H.R. Rep. No. 96-1418, at 9 (Sep. 26, 1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4988).

In sum, Respondents have failed to carry their burden of demonstrating that their position—that Petitioner, a non-U.S. citizen who had never been admitted to, but has been

---

[6] *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/BZ9N-H9FM] (last visited October 1, 2026) (ICE memorandum from July 8, 2025 disseminating "Interim Guidance" to "All ICE Employees," including that DHS "has revisited its legal position on detention and release authorities" insofar as "DHS has determined that [8 U.S.C. § 1225], rather than [8 U.S.C. § 1226], is the applicable immigration detention authority for all applications for admission," defined to include "[a noncitizen] present in the United States who has not been admitted").

[7] *See Barbosa da Cunha*, 175 F.4th at 96 (concluding that "the government's attempt to muddy these textually clear waters" by pursuing the same litigation position as here "defies the statute's context, structure, history, and purpose"); *id.* at 93 (reiterating that even if the Second Circuit were incorrect that "the unambiguous language of the statute unquestionably favors Petitioner's interpretation," the Circuit would still consider decades of consistent Executive Branch practice that contradicts the government's current position, as "it is hard to fathom how the plain text could be read to somehow unambiguously favor the government").

physically present in, the United States was subject to mandatory detention under Section 1225(b)(2)(A)—was "substantially justified." Accordingly, the Court finds that Petitioner is entitled to attorneys' fees under the EAJA.

**CONCLUSION**

For the reasons set forth above, Petitioner's motion for EAJA fees is granted. Petitioner is awarded $2,759.09 in attorneys' fees pursuant to the EAJA, 28 U.S.C. § 2412. Respondents are directed to file a status report on the docket within twenty-one (21) days of this Order indicating whether the fees have been paid to Petitioner's counsel. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 26, 2026
Brooklyn, New York